**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SENTINEL INSURANCE COMPANY, LIMITED, | ) ) | |
| Plaintiff, | ) | |
| | ) | Case No.   24-cv-12204 |
| v. | ) ) | |
| MAJESTIC AUTO GLASS INC., BRIAN SWANN, and ANTONIO CORONA, | ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, SENTINEL INSURANCE COMPANY, LIMITED ("Sentinel"), by and through its attorneys, Michael J. Duffy, Michael J. O'Malley, and Joanna C. Kocol of Wilson Elser Moskowitz Edelman & Dicker LLP, brings this Complaint for Declaratory Judgment against Defendants, MAJESTIC AUTO GLASS INC. ("MAG"), BRIAN SWANN ("Swann") and ANTONIO CORONA ("Corona", and collectively with Swann, "Underlying Plaintiffs"), and states as follows:

**STATEMENT OF THE CASE**

1.      This action seeks a declaration, pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), that Sentinel owes no insurance coverage obligations to MAG for the claims raised in the lawsuit styled: *BRIAN SWANN and ANTONIO CORONA v. MAJESTIC AUTO GLASS INC.*, Case No. 2024L002892, pending in the Circuit Court of Cook County, Illinois County Department, Law Division (the "Underlying Action").

2.      A copy of the Original Complaint filed in the Underlying Action is attached as "**Exhibit A**".

1

3.     A copy of the First Amended Complaint filed in the Underlying Action is attached as "**Exhibit B**".

## PARTIES

4.     Plaintiff, Sentinel, is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business at One Hartford Plaza, Hartford, Connecticut.

5.     Defendant, MAG is an Illinois corporation with its principal place of business located in Chicago, Illinois.

6.     Swann is an individual, citizen of Illinois, and a former employee of MAG.

7.     Corona is an individual, citizen of Illinois, and a former employee of MAG.

8.     Underlying Plaintiffs are named herein as nominal defendants because they are the plaintiffs in the Underlying Action and have a potential interest in this litigation. No relief is sought against Underlying Plaintiffs.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and the parties are citizens of different states.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because MAG's principal place of business is in this District, the relevant insurance policies were issued in this District, and the Underlying Action is pending in this District.

## FACTS

### A. THE UNDERLYING ACTION

11.     On March 18, 2024, Underlying Plaintiffs commenced the Underlying Action against MAG alleging violations of the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

12.     On July 16, 2024, Underlying Plaintiffs filed a First Amended Complaint in the Underlying Action.

13.     Underlying Plaintiffs allege that while they were employees of MAG, they were required to use a biometric time clock system that scanned their fingerprint, handprint, or hand geometry each time they needed to "log-in" and "log-out" at the start and conclusion of each working shift. *See* Ex. B, ¶ 12, ¶ 18.

14.     Underlying Plaintiffs also allege such biometric information was used "for purposes of time tracking and employee authentication." *See* Ex. B, ¶ 30-31.

15.     Underlying Plaintiffs allege that the relevant time period for purposes of the Underlying Action spans from March 18, 2019 to October 2023. *See* Ex. B, ¶ 10.

16.     Underlying Plaintiffs allege MAG violated BIPA by, among other things, collecting, capturing, possessing, and disseminating biometric identifiers or information without first obtaining written informed consent and failing to publicly disclose its retention schedule and guidelines for permanently destroying employee biometrics. *See* Ex. B.

17.     Underlying Plaintiffs allege MAG violated the following BIPA Sections:

- 740 ILCS § 14/15(a) by failing to develop, maintain, and comply with a publicly available retention and destruction schedule.

- 740 ILCS § 14/15(b) by obtaining biometric identifiers without making the required disclosures and receiving a written release from each Underlying Plaintiff.

- 740 ILCS § 14/15(d) by disclosing, redisclosing, or otherwise disseminating biometric identifiers and/or biometric information of Underlying Plaintiffs to a third-party without obtaining the Underlying Plaintiffs' consent.

*See* Ex. B.

**B.      *THE POLICIES***

18.      Sentinel issued four Business Owner's Policies to MAG bearing policy number 83 SBA NX4089, and with effective dates of March 18, 2019 to March 18, 2020 (the "2019-20 Policy"), March 18, 2020 to March 18, 2021 (the "2020-21 Policy"), March 18, 2021 to March 18, 2022 (the "2021-22 Policy"), March 18, 2022 to March 18, 2023 (the "2022-23 Policy"), and March 18, 2023 to March 18, 2024 (the "2023-24 Policy") (collectively, the "Policies").

19.      A true and correct copy of the 2019-20 Policy is attached as "**Exhibit C**."

20.      A true and correct copy of the 2020-21 Policy is attached as "**Exhibit D**."

21.      A true and correct copy of the 2021-22 Policy is attached as "**Exhibit E**."

22.      A true and correct copy of the 2022-23 Policy is attached as "**Exhibit F**."

23.      A true and correct copy of the 2023-24 Policy is attached as "**Exhibit G**."

24.      Subject to their terms, the Policies provide certain Business Liability Coverage, Employment Practices Liability Coverage ("EPL Coverage"), and Umbrella Coverage to MAG. *See* Exs. C-G.

**C.      *BUSINESS LIABILITY COVERAGE***

25.      The Business Liability Coverage Part, Form SS 00 08 04 05, states in part:

### A. COVERAGES

#### 1. Business Liability Coverage (Bodily Injury, Property Damage, Personal and Advertising Injury)

##### Insuring Agreement

**a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.*

**b.** *This insurance applies:*

*    *    *

*(2)   To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.*

*See* Exs. C-G.

26.    Section G- Definitions of the Business Liability Coverage Part provides:

*17.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

**a.**   *False arrest, detention or imprisonment;*

**b.**   *Malicious prosecution;*

**c.**   *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;[1]*

**d.**   *Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

---

[1] As modified by Endorsement Form SS 00 60 09 15 in the Policies.

**e.** *Oral, written or electronic publication of material that violates a person's right of privacy;*

**f.** *Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";[2]*

**g.** *Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site";[34]*

*See* Exs. C-G.

27. The Business Liability Coverage Part also contains the following Exclusions:

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage**

*This insurance does not apply to:*

**a. Expected or Intended Injury**

\*  \*  \*

**(2)** *"Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".*

\*  \*  \*

**p. Personal and Advertising Injury**

*"Personal and advertising injury"*

\*  \*  \*

**(11)** *Arising out of the violation of a person's right of privacy created by any state or federal act.*

*However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;*

\*  \*  \*

---

[2] As modified by Endorsement Form SS 40 26 03 17 in the Policies
[3] *Id.*
[4] Subsection h. is deleted by Endorsement Form SS 00 60 09 15.

**(15)**    *Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.[5]*

*                    *          *          *

**q.**    ***Access Or Disclosure of Confidential Or Personal Information And Data-related Liability[6]***

**(1)**    *Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or*

**(2)**    *Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.*

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.*

*However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".*

*As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related*

---

[5] Added by Endorsement Form SS 00 60 09 15 in the Policies.

[6] *Id.*

> *electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.*
>
> \* \* \*
>
> **r.    Employment-Related Practices**
>
> *"Personal and advertising injury" to:*
>
> *(1)    A person arising out of any "employment-related practices"; or:[7]*
>
> \* \* \*

*See* Exs. C-G.

**D.    EPL COVERAGE**

28.    The EPL Declarations Page states, in part:

> *This **Employment Practices Liability Coverage** contains claims made coverage. Except as may be otherwise provided herein, specified coverages of this insurance are limited generally to liability for injuries for which claims are first made against the insured while the insurance is in force…*

*See* Exs. C-G.

29.    The EPL Coverage Part, Form SS 09 01 12 14, states, in part:

> **EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM (CLAIMS MADE)**
>
> **NOTICE:  COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS.**
>
> \* \* \*
>
> **SECTION I – INSURING AGREEMENT**
>
> **Employment Practices Liability**

---

[7] As amended by Endorsement Form SS 00 60 09 15 in the Policies.

*We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the "insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".*

## SECTION II - DEFINITIONS

\*   \*   \*

C.  *"Claim" means any "employment practices claim".*

\*   \*   \*

F.  *"Damages" means the amounts, other than "claim expenses", that the "insureds" are legally liable to pay solely as a result of a "claim" covered by this Coverage Part, . . .*

*However, "damages" shall not include:*

*a. taxes, fines or penalties imposed by law;*
*b. non-monetary relief;*

\*   \*   \*

*With respect to the insurability of punitive or exemplary damages in the state of Illinois, "damages" does not include coverage for punitive or exemplary damages assessed as a result of the "insured's" own misconduct.[8]*

\*   \*   \*

I.  *"Employee" means any natural person who was, is or shall become a(n):*

1.  *employee of an "insured entity" including any part time, seasonal, temporary, leased, or loaned employee; or*

2.  *volunteer or intern with an "insured entity."*

\*   \*   \*

K.  *"Employment practices claim" means any:*

1.  *written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;*

---

[8] The definition of damages is amended by the Illinois Changes – Employment Practices Liability Endorsement, Form SS 09 06 12 14.

2. *civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration or similar pleading; or*

3. *formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;*

*by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor".*

\*       \*       \*

*"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.*

*"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.*

*However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.*

L. *"Employment practices wrongful act" means:*

1. *wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;*

2. *sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;*

3. *employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference; gender makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;*

10

4.      *"Retaliation";*

5.      *breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or*

6.      *violation of the Family and Medical Leave Act.*

*"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:*

a.      *employment-related wrongful infliction of mental anguish or emotional distress;*

b.      *failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;*

c.      *negligent retention, supervision, hiring or training;*

d.      *employment-related invasion of privacy, defamation, or misrepresentation; or*

e.      *an "employee data privacy wrongful act."*

\*      \*      \*

*See* Exs. C-G.

**E.      <u>UMBRELLA COVERAGE</u>**

30.      The Umbrella Declarations Page states, in part, that there is a self-insured retention of $10,000 for each occurrence. *See* Exs. C-G.

31.      The Umbrella Coverage Part, Form SX 80 02 04 05, provides, in part:

**A.      *Umbrella Liability Insurance***

***1.*** *We will pay those sums that the 'insured' becomes legally obligated to pay as "damages" in excess of the "underlying insurance"[9] or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence". . . .*

---

[9] Underlying Insurance is that set forth in the schedule of underlying insurance which in this case is the Primary Business Liability Coverage noted above.

11

**2.** *This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:*

    **a.** *The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period";*

            \*        \*        \*

*See* Exs. C-G.

32. The Umbrella Liability Coverage Part also provides the following definitions:

**D.** *"Damages" means a monetary award, monetary settlement or monetary judgment.*

*The following are not considered "damages" and are not covered by this Supplemental Policy:*

    **1.** *Fines, penalties, sanctions or taxes;*
    **2.** *Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or*
    **3.** *Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of this policy.*[10][11]

            \*        \*        \*

**F.** *"Occurrence" means:*

            \*        \*        \*

    **2.** *With respect to "personal and advertising injury", an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".*

            \*        \*        \*

**H.** *"Self-insured retention" means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".*

*See* Exs. C-G.

---

[10] Wherever the word "policy" appears in the Umbrella Declarations form or in endorsements attached to or made part of the Umbrella Liability Supplemental Contract, it means "Supplemental Contract".

[11] The definition of "damages" is amended by the "Amendment of Umbrella Conditions – Illinois" Endorsement, Form, SX 02 04 01 18.

33. The Umbrella Coverage Part also contains the following exclusions:

This policy does not apply to:

**4.** *Personal And Advertising Injury*

*"Personal and advertising injury".*

*EXCEPTION*

*This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule Of Underlying Insurance Policies.[12]*

\* \* \*

*Access Or Disclosure Of Confidential Or Personal Information*
*"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.*

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.[13]*

\* \* \*

**18.** *Employment Practices Liability*

*Any injury or damage to:*

**1.** *A person arising out of any:*

**(a)** *Refusal to employ that person;*

---

[12] As amended by Following Form Endorsement Form SX 24 33 06 10 in the Policies.
[13] As added by Endorsement Form SX 23 15 12 15 in the Policies.

*(b)*     *Termination of that person's employment; or*

*(c)*     *Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person; or*

*         *         *

*This exclusion applies:*

*i.*     *Whether the "insured" may be liable as an employer or in any other capacity; and*

*ii.*    *To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.*

*         *         *

**22.    *Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability[14]***

*Damages arising out of:*

*(1)*    *Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or*

*(2)*    *The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.*

*This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.*

---

[14] As added by Form SX 23 15 12 15 in the Policies.

>*However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".*
>
>*As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

*See* Exs. C-G.

**F.     NOTICE, TENDER, AND ACTUAL CONTROVERSY**

34.     The Original Complaint in the Underlying Action was filed on March 18, 2024.

35.     MAG was served with summons on April 5, 2024.

36.     MAG appeared in the Underlying Action on May 16, 2024 and filed an unopposed motion for extension of time to answer the Underlying Plaintiffs' Complaint.

37.     MAG tendered the Underlying Action to Sentinel for coverage on July 11, 2024.

38.     A default order was entered against MAG on October 23, 2024 with a prove-up hearing scheduled for December 2, 2024.

39.     Sentinel denies that it owes MAG any defense or indemnity obligation under the Policies.

40.     An actual and justiciable controversy exists between Sentinel on the one hand, and MAG and the Underlying Plaintiffs on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

**COUNT I**
**No Allegations of "Bodily Injury" or "Property Damage" Caused by an "Occurrence"**
*(Business Liability and Umbrella Coverage Parts)*

41.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

42.     Subject to all of their terms, the Policies only provide coverage for claims for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined and used in the Policies.

43.     The Underlying Action does not allege a claim for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined and used in the Policies.

44.     Thus, Sentinel owes no defense or indemnity obligations to MAG for the claims against it in the Underlying Action.

**COUNT II**
**Access or Disclosure Exclusions Preclude Coverage**
*(Business Liability and Umbrella Coverage Parts)*

45.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

46.     The Access or Disclosure Exclusions (Exclusions **p. 15** and **q.** in the Business Liability Part and Exclusion **22** in the Umbrella Coverage Part) preclude coverage under the Primary Business Liability Coverage and Umbrella Liability Coverage Parts for damages that arise out of access to or disclosure of any individuals' confidential or personal information, including health information or any other type of nonpublic information.

47.     The Underlying Action only seeks damages arising out of access to or disclosure of the Underlying Plaintiffs' biometric information, which is confidential or personal information.

16

48.     The Access or Disclosure Exclusions in the Policies bar coverage under the Primary Business Liability Coverage and Umbrella Liability Coverage Parts for the claims alleged in the Underlying Action.

49.     As such, Sentinel owes no defense or indemnity obligations to MAG for the claims against it in the Underlying Action.

**COUNT III**
**Statutory Right of Privacy Exclusions Preclude Coverage**
*(Business Liability and Umbrella Coverage Parts)*

50.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

51.     The Statutory Right of Privacy Exclusion, Exclusion (11) in the Primary Business Liability Coverage Part bars coverage for "personal and advertising injury" arising out of a person's right of privacy created by any state or federal act.

52.     The only claims pled in the Underlying Action are claims under Illinois' BIPA, a state act that protects a person's right of privacy.

53.     To the extent any "personal and advertising injury" is alleged in the Underlying Action, the Statutory Right of Privacy Exclusion precludes coverage under the Primary Business Liability Coverage Part.

54.     Therefore, Sentinel owes no defense or indemnity obligations to MAG for the claims against it in the Underlying Action.

**COUNT IV**
**Employment-Related Practices Exclusions Preclude Coverage**
*(Business Liability and Umbrella Coverage Parts)*

55.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

56.     The Employment-Related Practices Exclusions in the Primary Business Liability Coverage Part and Umbrella Liability Coverage Part preclude coverage for claims arising out of any employment-related practices, irrespective of whether MAG is sought to be held liable as an employer.

57.     The Underlying Action alleges Underlying Plaintiffs were, as a condition of their employment with MAF, required to clock in and out using a biometric time clock.

58.     The claims in the Underlying Action against MAG are excluded from coverage by the Employment-Related Practices Exclusions.

59.     Consequently, Sentinel owes no defense or indemnity obligations to MAG for the claims against it in the Underlying Action.

**COUNT V**
**Expected or Intended Exclusions Preclude Coverage**
*(Business Liability and Umbrella Coverage Parts)*

60.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

61.     The Expected or Intended Exclusions bar coverage for "personal and advertising injury" arising out of an offense committed by or with the consent or acquiescence of the insured with the expectation of inflicting personal and advertising injury.

62.     The Underlying Action alleges MAG intentionally violated BIPA.

63.     Accordingly, the Expected or Intended Exclusions bar coverage for any such claims.

64.     As a result, Sentinel owes no duty to defend or indemnify MAG for these claims in the Underlying Action.

## COUNT VI
## No Umbrella Coverage for Personal and Advertising Injury
### *(Umbrella Coverage Part)*

65.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

66.     The Umbrella Coverage Part bars coverage for "personal and advertising injury" unless the Underlying Insurance provides such coverage.

67.     The Underlying Insurance means the Primary Business Liability Coverage.

68.     For the reasons stated above, the Primary Business Liability Coverage Part does not provide "personal and advertising injury" coverage for the Underlying Action.

69.     Accordingly, there is also no "personal and advertising injury" coverage under the Umbrella Coverage Part.

## COUNT VII
## The Damages for Each Occurrence Do Not Exceed
## the SIR under the Umbrella Coverage Part
### *(Umbrella Coverage Part)*

70.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

71.     The Umbrella Declarations Page provides that there is a "self-insured retention" of $10,000 for each "occurrence."

72.     "Self-insured retention" means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".

73.     "Occurrence" means, with respect to "personal and advertising injury", an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

74.     The Underlying Action seeks up to $5,000 for each intentional or reckless violation of BIPA or $1,000 for each negligent violation of BIPA.

75.     Because the damages sought per "occurrence" do not exceed the self-insured retention per "occurrence" in the Umbrella Coverage Part, coverage is not afforded for the Underlying Action under the Umbrella Coverage Part.

## COUNT VIII
## No EPL Coverage
### *(EPL Coverage Part)*

76.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

77.     The EPL Coverage is claims-made coverage and is only triggered by claims first made during the policy period in effect at the time the first claim is made.

78.     The claims in the Underlying Action were first made after the 2023-24 Policy Period and any applicable reporting period.

79.     Because the claims were not first made during the effective dates of any of the Policies or applicable reporting periods, no EPL Coverage is afforded.

80.     Additionally, the claims in the Underlying Action do not allege an "employment practices wrongful act" as the term is defined.

81.     As such, no EPL Coverage is afforded for the claims in the Underlying Action.

## COUNT IX
## No Damages Under EPL or Umbrella Coverages
### *(EPL and Umbrella Coverage Parts)*

82.     Sentinel incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

83.     The term "damages" under the EPL and Umbrella Coverage Parts does not include taxes, fines or penalties imposed by law.

84.     The term "damages" under the EPL and Umbrella Coverage Parts also does not include non-monetary relief.

85. To the extent the damages sought under BIPA constitute fines or penalties imposed by law, and to the extent the claims seek non-monetary relief, coverage is not afforded under the EPL or Umbrella Coverage Parts.

86. Therefore, Sentinel owes no coverage to MAG for the claims in the Underlying Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sentinel prays this Court enter the following relief:

A. A declaration finding Sentinel owes no duty to defend or indemnify MAG for the claims against it in the Underlying Action under the Policies; and

B. For all such just and equitable relief, including costs of this suit.

Respectfully Submitted,

By: /s/ Michael J. O'Malley
     Attorney for Sentinel Insurance
     Company, Limited

Michael J. Duffy
Michael J. O'Malley
Wilson Elser Moskowitz Edelman & Dicker LLP
55 W. Monroe Street, Suite 3800
Chicago, Illinois 60603
312.704.0550 (Main)
Michael.Duffy@wilsonelser.com
Michael.O'Malley@wilsonelser.com